This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41613**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ADAM FRANK CRESPIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Ben Cross, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant was convicted of battery upon a peace officer, contrary to NMSA 1978, § 30-22-24 (1971); and resisting, evading or obstructing an officer (arrest), contrary to NMSA 1978, § 30-22-1(B) (1981). Defendant appeals only his conviction of battery upon a peace officer, claiming that (1) the jury's determination that he "intentionally touched or applied force to [the officer] by elbowing him in the face and pushing him to the ground" is not supported by substantial evidence; (2) the district court's admission of Defendant's drug use was plain error under Rules 11-402, 11-403,

and 11-404 NMRA; (3) the State committed prosecutorial misconduct in its closing arguments by referring to evidence of Defendant's drug use; (4) Defendant's counsel failed to provide effective assistance; and (5) the district court failed to make statutorily required findings to sentence Defendant as a serious violent offender. We reverse and remand for reconsideration of the serious violent offender determination. We otherwise affirm.

**DISCUSSION**

{2}     This is a memorandum opinion. We have not included a background section, and instead discuss the facts relevant to each issue in our discussion of that issue. Because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised.

**I.      Sufficient Evidence Supports Defendant's Conviction of Battery Upon a Peace Officer**

{3}     Defendant first challenges the sufficiency of the evidence supporting his conviction of battery upon a peace officer. Defendant argues that he did not intentionally touch or apply force to Officer Cope, claiming that there was no evidence to support the jury's findings that Defendant pushed the officer to the ground or that he intentionally, rather than accidently, elbowed the officer in the face. Defendant claims that Officer Cope pushed Defendant to the ground, rather than Defendant pushing the officer, and that Defendant's "elbow happened to make contact with [the officer's] face."[1] We conclude that the evidence was sufficient to support the jury's findings that Defendant pushed the officer to the ground and intentionally elbowed him in the face.

{4}     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In doing so, this Court "[does] not re-weigh the evidence to determine if there was another hypothesis that would support innocence." *See State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted).

---

[1]The State defends against an additional argument in its answer brief on appeal: it claims there was sufficient evidence to support the jury's finding that Defendant knew that Officer Cope was a peace officer. Because Defendant does not challenge this finding on appeal, we do not address the State's argument.

**{5}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. In this case, the jury was instructed that the State must prove beyond a reasonable doubt that "[D]efendant intentionally touched or applied force to [the officer] by elbowing him in the face and pushing him to the ground."

**{6}** The jury was also given the New Mexico Uniform Jury Instruction on general criminal intent, UJI 14-141 NMRA. The jury was instructed in relevant part as follows:

> A person acts intentionally when he purposely does an act which the law declares to be a crime even though he may not know that his act is unlawful. Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.

**{7}** In Defendant's argument on sufficiency of the evidence, he does not challenge the court's decision to instruct the jury solely on general criminal intent.[2] Defendant argues that he did not have the general intent required by UJI 14-141 because he "made incidental, unintentional contact with [Officer] Cope." Defendant's primary argument is that the evidence presented by the State was insufficient to allow a rationale juror, applying the general intent instruction given by the district court, to find that Defendant acted intentionally in elbowing Officer Cope in the face.

**{8}** The general intent instruction, quoted above, requires the jury to find that Defendant purposely performed the alleged action. In other words, Defendant must have intended to perform the action of striking the officer with his elbow. An argument that Defendant's elbow accidently made contact with the officer states a valid defense to a general intent requirement. Defendant's reason for striking the officer, however, is not relevant to general intent to touch or exert force on the officer. Defendant's argument that he just wanted to get away, or that he did not want to fight with or injure the officer does not make his act unintentional under the relevant general intent jury instruction.

---

[2]The defense, in its argument on appeal on prosecutorial misconduct, questions the absence of a specific intent instruction. Neither party sought a specific intent instruction as to any element of the battery on a peace officer charge or argued that the general intent instruction failed to adequately apprise the jury of the relevant law. Although there may be an argument that some element of battery upon a peace officer requires specific intent, the sole element disputed at trial was Defendant's intent to touch or apply force to the officer. The application of general intent to this element of the crime is consistent with our law on battery, which provides that the intent to touch or apply force to another requires only general intent. *See State v. Skippings*, 2011-NMSC-021, ¶ 14, 150 N.M. 216, 258 P.3d 1008 ("[T]he simple battery statute only requires that the perpetrator possess general criminal intent to touch or apply force to the person of another, when done in a rude, insolent or angry manner." (internal quotation marks and citation omitted)). Because no aspect of the crime of battery upon a peace officer that may require specific intent is at issue in this appeal, and because no request for a specific intent instruction was made in the district court, we do not address the parties' belated arguments on whether other aspects of the crime of battery on a peace officer might require the jury to be instructed on specific intent. We assume that the general intent instruction properly governs Defendant's intent to touch or apply force to the officer, the sole issue in this appeal.

**{9}**    Defendant's alternative argument that he acted without the required intent because he hit the officer with his elbow accidentally, without intending to make contact with the officer, raises a question of fact, which must be considered and decided by the jury based on the evidence in the record. The general intent instruction—given to the jury by the district court—permits the jury to infer intent from the evidence of Defendant's behavior and the surrounding circumstances. "[B]ecause an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence." *State v. Nozie*, 2009-NMSC-018, ¶ 32, 146 N.M. 142, 207 P.3d 1119 (internal quotation marks and citation omitted); *see also* UJI 14-141 (stating that "[w]hether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him]").

**{10}**    As an appellate court, we do not second guess the jury's findings of fact. So long as a finding is supported by substantial evidence in the record, we must uphold the jury's verdict. In this case substantial circumstantial evidence in the record supports the jury's conclusion that Defendant intended to hit the officer with his elbow and that it was not accidental contact. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (providing that "the jury is free to reject [a d]efendant's version of the facts"). The jury watched Officer Cope's body camera footage, showing the struggle between Defendant and Officer Cope as it unfolded. That evidence showing Defendant struggling with the officer and pushing him down, combined with Officer Cope's testimony that he was hit in the face by Defendant's elbow is sufficient for the jury to be able to infer that Defendant struck the officer intentionally.

**{11}**    Defendant's claim that he did not push the officer down, but rather that the officer pushed him, is directly refuted by the body camera footage that the State played for the jury. Defendant points to the officer's testimony that he tackled Defendant to the ground—but the officer's body camera video also shows Defendant, after the tackle, placing his hands on the officer's chest and pushing him back onto the ground as the officer struggled to get on his feet. We, therefore, do not further consider Defendant's argument that the jury's finding, that Defendant pushed the officer down, is not supported by any evidence in the record.

**{12}**    We conclude that the evidence that Defendant intentionally pushed the officer down and intentionally struck him with his elbow in the face is sufficient to sustain Defendant's conviction for battery upon a peace officer.

## II.    Admission of Evidence Related to Defendant's Drug Use Was Not Plain Error

**{13}**    Defendant argues that the district court erroneously admitted Defendant's statement to the arresting law enforcement officer that he had used heroin and fentanyl the day of the charged incident. Defendant contends that this evidence was irrelevant under Rule 11-402, unduly prejudicial under Rule 11-403, and improper character evidence under Rule 11-404.

**{14}** Defendant concedes that defense counsel made no objection in the district court to the admission of Defendant's statement concerning his drug use the day of the incident. Indeed, Defendant's drug use was mentioned twice during the arresting officer's testimony without objection: (1) in testifying to Defendant's statement at the time of the arrest, and (2) in testifying that Defendant later asked for medical care because of illness arising from the drugs he had ingested, and that the officer took Defendant to a hospital for treatment. Because defense counsel did not object, our review is for plain error.

**{15}** "Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (internal quotation marks and citation omitted). "Because [the plain error rule] is an exception to the preservation requirement, we apply the rule sparingly and only when we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Muller*, 2022-NMCA-024, ¶ 43, 508 P.3d 960 (internal quotation marks and citation omitted).

**{16}** Defendant argues that "[i]t is unclear what relevance [his drug use] had to the State's case," noting that drug use was not an element of either crime charged against Defendant. Defendant also argues that his drug use that day was not relevant to his intent to strike the officer with his elbow or to whether he pushed the officer down. We are not persuaded that the admission of this evidence, if it was error, was the kind of obvious and plain error that the district court should have recognized without an objection. *See State v. Montoya*, ___-NMCA-___, ¶ 26, ___ P.3d ___ (A-1-CA-41444 (Aug. 21, 2025) "The plain error rule should be applied with caution and only where the error is obvious and seriously affects the integrity or fairness of the judicial proceedings." (alteration, internal quotation marks, and citation omitted)).

**{17}** Despite Defendant's argument on appeal that his admission of drug use that day and the evidence of his need for medical treatment for drug use was irrelevant to the elements of the crime, Defendant relied on this evidence in his closing argument to the jury to support an inference that he did not intentionally strike Officer Cope, but that his elbow accidentally came into contact with the officer. We understand this argument as an attempt to convince the jury that Defendant's confusion or illness caused by his drug use on that day made it more likely that Defendant accidentally hit Officer Cope with his elbow as he flailed to escape arrest. This reliance on drug use undercuts Defendant's argument that the admission of this evidence was irrelevant and that it was so prejudicial to the defense that reversal is required under the higher standard that we apply when error is not preserved. We therefore reject Defendant's argument that the admission of Defendant's drug use on the day of the battery was plain error.

### III.    The State Did Not Commit Prosecutorial Misconduct in Closing Argument

**{18}** Defendant argues that the prosecution's mention in its initial closing argument that Defendant admitted to law enforcement that he took heroin and fentanyl, together with the statement that "both of those are drugs in our community that are a problem,"

amounted to prosecutorial misconduct. Defendant also argues that the prosecution's rebuttal closing argument, focusing on Defendant's drug use and claimed intoxication at the time of the offense, and arguing that intoxication is not a defense to the general intent crime of battery upon a police officer amounts to prosecutorial misconduct. We are not persuaded.

**{19}** Because Defendant made no objection in the district court to any part of the State's closing argument, we review for fundamental error. "The first step in reviewing for fundamental error is to determine whether an error occurred. If that question is answered affirmatively, we then consider whether the error was fundamental." *State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial. An isolated, minor impropriety ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citations omitted).

**{20}** To find prosecutorial misconduct under a fundamental error standard, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *See State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). The context of the alleged prosecutorial conduct is crucial to evaluating both whether there was misconduct and whether that misconduct was so egregious as to deprive Defendant of a fair trial. *See id.* ¶ 34 (noting that "in the final analysis context is paramount").

**{21}** In this case, as already discussed, the defense focused on raising a reasonable doubt as to whether Defendant acted intentionally when he struck Officer Cope with his elbow. Defense counsel argued for a directed verdict at the close of the State's evidence on the basis that the prosecution failed to provide sufficient evidence that Defendant struck Officer Cope intentionally. Defendant argued that the evidence failed to show he had the intent to hit the officer with his elbow required to commit battery upon a peace officer. Importantly, Defendant relied in seeking a directed verdict on the evidence of Defendant's drug use that day and his hospitalization for that drug use in arguing that he struck the officer accidentally.

**{22}** Defendant's argument on appeal that the prosecution committed misconduct in its closing argument focuses on the prosecution's mention of Defendant's drug use and, in particular, on the prosecution's attempt to refute Defendant's argument that his drug use was in any way a valid consideration in determining whether he acted intentionally. Defendant characterizes the prosecution's argument as misconduct because it "urges a jury to convict for reasons other than the evidence." *See State v. Cooper*, 2000-NMCA-041, ¶ 15, 129 N.M. 172, 3 P.3d 149; *see also State v. Diaz*, 1983-NMCA-091, ¶ 18, 100 N.M. 210, 668 P.2d 326 (same). Defendant, however, does not point to any statement by the State in either its initial closing argument or in rebuttal closing where

the State asks the jury to convict for a reason not in evidence. Defendant relies on *Diaz* because it involved improper commentary on an intoxication defense *See Diaz*, 1983-NMCA-091, ¶¶ 17-18. It is, however, not analogous to the circumstances in this case.

**{23}** *Diaz* arises in the context of a specific intent crime where the defendant raised an intoxication defense to the specific intent crime at issue in that case, and the jury was instructed to consider that defense. *See id.* ¶ 18. The prosecutorial misconduct identified by this Court in *Diaz* was the prosecution's argument urging the jury "to disregard the defense even if they find it meritorious," to send a message to the community about drug use. *Id*.

**{24}** Defendant describes no statement in this case comparable to that in *Diaz* urging the jury to disregard Defendant's intent defense. The prosecution here correctly argued that all of Defendant's acts had been intentional under the general intent instruction given the jury and could not be excused by his intoxication. This is a correct statement of the law as to the crimes charged. The prosecution did not tell the jury to disregard Defendant's defense that he accidentally struck Officer Cope with his elbow.

**{25}** To the extent the prosecution's argument created any confusion about the role of intoxication by drug use in determining intent, that argument was invited by the defense in both its motion for a directed verdict and in its closing argument where the defense, apparently inadvertently, referred to the intent required in striking a peace officer as *specific* intent rather than *general* intent. *See State v. Medema*, 2025-NMCA-011, ¶ 31, ___ P.3d ___ ("If a prosecutor's comment is invited by a defense argument, it does not constitute reversible error, even if the comment is improper.").

**{26}** We conclude that there was no prosecutorial misconduct in closing argument and that reversal is not warranted. Having found no misconduct, we need not address the second prong of our fundamental error standard.

## IV.    Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel

**{27}** Defendant next argues that he received ineffective assistance from his trial counsel because his trial counsel failed to object to the admission of drug-use evidence, and then attempted to use that evidence to argue an implausible specific intent intoxication defense. We are not persuaded that Defendant has established a prima facie case of ineffective assistance of counsel.

**{28}** Criminal defendants possess a constitutional right to "reasonably effective assistance of counsel." *State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604 (internal quotation marks and citation omitted); *see* U.S. Const. amend. VI; N.M. Const. art. II, § 14. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. To establish a prima facie case of ineffective assistance of counsel, Defendant must show that "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *See State v.*

*Trammell*, 2016-NMSC-030, ¶ 16, 387 P.3d 220 (internal quotation marks and citation omitted). In conducting our review, we rely on the information in the record. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

**{29}** We address first whether the record establishes that defense counsel's performance was deficient. "To show deficiency the defendant must demonstrate the defense counsel did not exercise the skill of a reasonably competent attorney." *Lukens v. Franco*, 2019-NMSC-002, ¶ 17, 433 P.3d 288 (internal quotation marks and citation omitted). "In determining whether a particular counsel's performance was deficient, an appellate court should presume that the performance fell within a wide range of reasonable professional assistance." *Roybal*, 2002-NMSC-027, ¶ 21 (internal quotation marks and citation omitted). "Indeed, if on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance." *Id.*

**{30}** In opening argument, defense counsel raised two defenses: lawful authority to arrest and whether Defendant had the intent necessary to commit battery on a peace officer by striking him with his elbow. Although in seeking a directed verdict and in closing argument, defense counsel used the incorrect term "specific intent," defense counsel consistently argued that Defendant had struck Officer Cope with his elbow accidentally, as Defendant was attempting to push himself to his feet and escape. This defense is entirely consistent with the counsel's argument that Defendant's drug use contributed to his accidentally hitting the officer.

**{31}** The record does not support Defendant's argument that defense counsel improperly raised an intoxication defense applicable only to specific intent crimes. *See* UJI 14-5111 NMRA (describing the intoxication defense where a defendant alleges an inability due to intoxication to form the specific intent demanded by a particular crime). Such a defense would have been inconsistent with the jury instructions in this case. The defense used the evidence of Defendant's drug use as a circumstance from which the jury might infer that Defendant was not paying full attention, was confused, or was unsteady on his feet, arguably making it more likely his elbow accidently struck the officer as he was attempting to escape. We do not find this use of the drug testimony to be an unreasonable trial strategy. It arguably bolstered Defendant's primary defense— that he hit Officer Cope with his elbow accidentally. *See* UJI 14-141 (general intent).

**{32}** Because we determine that the record available to us shows that defense counsel pursued a reasonable defense strategy in this case, we do not consider whether this strategy was prejudicial—the second prong necessary to establish a prima facie case of ineffective assistance of counsel. As stated above, where a defendant has failed to establish a prima facie case of ineffective assistance of counsel, a collateral proceeding is the appropriate manner of pursuing a claim for ineffective assistance of counsel. *See State v. Bernal*, 2006-NMSC-050, ¶ 36, 140 N.M. 644, 146 P.3d 289 (concluding that although the defendant did not present a prima facie case of ineffective

assistance of counsel on direct appeal, the decision did not preclude the defendant from pursuing habeas relief).

## V.  The District Court Failed to Make the Findings Required by Statute to Support Classifying Defendant's Offense as a "Serious Violent Offense"

**{33}**   Lastly, Defendant contends that the district court's findings were legally insufficient to support its conclusion that Defendant committed a serious violent offense under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, Section 33-2-34 (2003, as amended 2015).[3]

**{34}**   Under the EMDA, prisoners convicted of a serious violent offense may earn only four days a month of credit against their time in prison for participating in certain programs, while prisoners convicted of nonviolent offenses may earn up to thirty days a month. *See* § 33-2-34(A)(1), (2). The statute provides a list of offenses that are per se serious violent offenses. *See* § 33-2-34(L)(4)(a)-(n). The statute also provides a list of offenses that, based on "the nature of the offense and the resulting harm," may be categorized as serious violent offenses in a particular case, at the discretion of the sentencing court. *See* § 33-2-34(L)(4)(o).

**{35}**   Defendant's battery upon a peace officer is a crime that falls within the discretionary authority of the district court to designate a crime as a serious violent offense. *See* § 33-2-34(L)(4)(o)(15). This Court has held that the EMDA reserves "the serious violent offenses for those found by the trial judge to be committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *See State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747, *abrogated on other grounds by State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144. A district court exercising its discretion to determine that an offense is "a serious violent offense," must adopt findings that describe the manner in which the offense was committed that qualify it as "a serious violent offense." *See State v. Loretto*, 2006-NMCA-142, ¶ 14, 140 N.M. 705, 147 P.3d 1138. "[T]he district court's findings must demonstrate how the defendant's acts amounted to an offense committed in a physically violent manner," either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm. *State v. Scurry*, 2007-NMCA-064, ¶ 6, 141 N.M. 591, 158 P.3d 1034 (internal quotation marks and citations omitted).

**{36}**   Defendant argues on appeal that the district court's findings fail to comply with the requirement of EMDA because the findings lack a clear explanation of the facts relied on by the district court to conclude that Defendant's acts were committed in the

---

[3]The New Mexico Legislature amended Section 33-2-34 in 2025. *See* 2025 N.M. Laws, ch. 29, § 1 *and* ch. 79, § 4. This appeal concerns a crime committed in 2022, and we therefore rely on the 2015 version of the statute. *See State v. Allen*, 1971-NMSC-026, ¶ 6, 82 N.M. 373, 482 P.2d 237 (holding that "the law, at the time of the commission of the offense, is controlling" (citing *Williams v. State*, 1970-NMSC-092, ¶ 4, 81 N.M. 605, 471 P.2d 175).

physically violent manner required by statute. Although the district court's decision to designate a particular crime as a serious violent offense is plainly a discretionary act, the district court abuses its discretion if it acts contrary to law. *Scurry*, 2007-NMCA-064, ¶ 4. We review de novo whether the district court's findings comply with the law.

**{37}**     The district court's written judgment and sentence makes the following statement concerning its determination that Defendant committed a serious violent offense: "[H]aving judged [the battery on a peace officer count] to be a serious violent offense due to the nature of the offense and the resulting harm, the above conviction . . . is a serious violent offense pursuant to . . . [Section] 33-2-34(L)(4)(o)(15)." At the sentencing hearing, the district court stated the following:

> I sat through the trial in this case and I viewed the video in this case and I understand the injuries that were received by the peace officer in this matter. And I'm going to find that the nature of the offense and the resulting harm are such that I am going to judge this to be a serious violent offense.

**{38}**     Neither of the district court's two statements addressing its determination that Defendant committed a serious violent offense give this Court or Defendant any insight into what the district court relied on to determine Defendant's conduct in this case rose to the level of a serious violent offense. The Legislature has not determined that every battery upon a peace officer is a serious violent offense. Further, Officer Cope stated that he was not seriously injured. This Court has held that the district court is required to explain what evidence it relied on to determine that Defendant acted with either (1) an intent to do serious harm or (2) recklessness in the face of knowledge that his acts are reasonably likely to result in serious harm. *See Scurry*, 2007-NMCA-064, ¶ 6. We conclude that the district court's findings do not fulfill the statutory requirement for an explanation of the basis for its decision that this was a serious violent offense under the EMDA.

**CONCLUSION**

**{39}**     We reverse the district court's finding that Count 1 (battery upon a peace officer) was a serious violent offense, and remand to the district court to reconsider whether the offense was a serious violent offense, and, if the court concludes that it was, to enter appropriate findings in accordance with this opinion. We otherwise affirm Defendant's conviction of Count 1, battery upon a peace officer.

**{40}    IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**KATHERINE A. WRAY, Judge**