PEOPLE v BAILEY

Docket No. 50043. Submitted January 6, 1981, at Grand Rapids.— Decided February 5, 1981.

Barry R. Bailey was convicted of second-degree criminal sexual conduct in Montcalm Circuit Court, Charles W. Simon, Jr., J. The defendant appeals, alleging that 1) reversible error occurred because the trial court allowed testimony at trial regarding evidence of prior similar acts between the defendant and the victim, 2) the trial court committed reversible error in allowing the defendant to be impeached by the prosecutor's asking the defendant if he had previously been convicted of attempted rape of his daughter, 3) the jury instructions were erroneous, and 4) the trial court erred in sentencing the defendant to a mandatory five-year minimum sentence despite the fact that no supplemental information was filed informing him that he faced sentence enhancement as a second offender. *Held:*

1. The defendant's objection to the testimony regarding prior sexual acts between the defendant and his daughter was not timely. Thus, absent manifest injustice, the Court of Appeals will not reverse his conviction. The trial court was correct in ruling that this testimony was admissible as evidence of prior similar acts occurring between the defendant and the victim.

2. Evidence of the defendant's prior sexual conduct with his

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 553, 558-561.

[2, 3] 29 Am Jur 2d, Evidence §§ 321, 719.

65 Am Jur 2d, Rape §§ 70, 72.

Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.

Admissibility, at trial of criminal case, of evidence of defendant's criminal acts other than those charged-Supreme Court cases. 93 L Ed 185.

[3] 41 Am Jur 2d, Incest §§ 17-19.

[4] 41 Am Jur 2d, Incest § 5.

65 Am Jur 2d, Rape § 3.

70 Am Jur 2d, Sodomy §§ 5, 6.

[5] 65 Am Jur 2d, Rape § 108 *et seq.*

[6] 73 Am Jur 2d, Statutes §§ 145, 146, 300.

daughter was properly admitted under the similar acts doctrine. Any error in the admission of evidence of the defendant's prior conviction for attempted rape of his daughter was harmless.

3. The defendant did not object to the jury instructions as given by the trial judge. The failure to object does not preserve the issue for appeal and the Court of Appeals will not reverse his conviction absent a finding of manifest injustice. The jury was fully and properly apprised of the applicable law.

4. The use note to CJI 20:2:04 is erroneous as it conflicts with the statutory elements of first-degree criminal sexual conduct. Trial courts should discontinue the use of CJI 20:2:04 and instruct the jury on the statutory definition of sexual penetration when a defendant is charged with first or third-degree criminal sexual conduct and instruct the jury on the statutory definition of sexual contact when a defendant is charged with second or fourth-degree criminal sexual conduct.

5. The Legislature did not provide for the procedural requirements of the habitual offender act in the statute providing for a mandatory minimum sentence of at least five years for a second or subsequent conviction of first, second, or third-degree criminal sexual conduct and those requirements will not be implied where the legislative intent is not to provide such requirements. The trial court did not err in sentencing the defendant to a mandatory five-year minimum sentence despite the fact that no supplemental information was filed informing the defendant that he faced sentence enhancement as a second offender.

Affirmed.

1. APPEAL — UNOBJECTED-TO MATTERS.

Matters unobjected to at trial are not preserved for review in the absence of a showing of manifest injustice.

2. CRIMINAL LAW — EVIDENCE — CRIMINAL SEXUAL CONDUCT —
ANTECEDENT SEXUAL ACTS.

Generally, the probative value of testimony concerning prior sexual contact between a defendant and a victim, in a criminal sexual conduct trial, is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence; however, the probative value outweighs the disadvantage where the crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense.

3. CRIMINAL LAW — EVIDENCE — CRIMINAL SEXUAL CONDUCT — ANTECEDENT SEXUAL ACTS.

Allowing the admission of evidence of antecedent sexual acts between a defendant and victim in a criminal sexual conduct trial is especially justified where the offense charged is against a member of the defendant's household; otherwise the testimony of the victim concerning the seemingly isolated incident may well appear incredible.

4. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — DEFINITIONS.

The plain meaning of first and third-degree criminal sexual conduct is that the offense is committed where there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances, regardless of the sexual purpose of the actor.

5. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — CRIMINAL JURY INSTRUCTIONS.

The use note of the standard criminal jury instruction which indicates that the definition of sexual act must be given where there is any question about the sexual nature of the act and only when a defendant is charged with first-degree or third-degree criminal sexual conduct is erroneous because it conflicts with the statutory elements of first-degree criminal sexual conduct (MCL 750.520a[h]; MSA 28.788[1][h], CJI 20:2:04).

6. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — MANDATORY MINIMUM SENTENCE — SECOND OR SUBSEQUENT CONVICTION — STATUTES.

There are no procedural requirements within the Michigan statute providing for a mandatory minimum sentence of at least five years for a second or subsequent conviction of first, second, or third-degree criminal sexual conduct which require the filing of a supplemental information, nor can such a requirement be implied from the habitual offender act, and those requirements will not be implied where the legislative intent is not to provide such requirements (MCL 750.520f; MSA 28.788[6]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward L. Skinner,* Prosecuting Attorney, and *Bruce E. Basom,* Assistant Prosecuting Attorney, for the people.

*Donald R. Hemingsen,* for defendant on appeal.

Before: ALLEN, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

PER CURIAM. On October 26, 1979, defendant was convicted by a jury in Montcalm County Circuit Court of second-degree criminal sexual conduct (CSC) in violation of MCL 750.520c; MSA 28.788(3). On December 7, 1979, defendant was sentenced under MCL 750.520(f); MSA 28.788(6) to five to ten years imprisonment.

The testimony at trial showed that defendant and his former wife were divorced. Defendant's daughter and two sons remained in the custody of their mother. The daughter and two sons were spending the weekend of June 9 and 10, 1979, with their father, who had subsequently remarried, and stepmother. Defendant's daughter, who was 12 years old at the time of the trial, testified that on Saturday, June 10th, she and her brothers got into trouble with their father for allegedly stealing money from their stepmother's purse and spilling some Kool-Aid. She further testified that that night she fell asleep on the couch while watching television, and that her brothers feel asleep in sleeping bags between the couch and the television. She awoke to find defendant kneeling beside her. She stated that defendant, while holding her down with one hand on her shoulder, stuck his other hand inside her underpants and rubbed her genitals asking, "Do you want to be forgiven?". She testified that defendant left when he heard the creaking of her stepmother's bed. The prosecution then asked defendant's daughter whether anything like this had happened before. No objection was raised by defendant. Defendant's daughter responded in the affirmative, indicating that approximately six years earlier, shortly before her father and mother's divorce, defendant "put some-

thing on my privates", pulled his pants down and laid on top of her.

Complainant's brother Earl also testified at trial. He confirmed his sister's testimony that his father was kneeling beside her holding her down with one hand and putting his other hand on her crotch, asking her if she wished to be forgiven. He also testified that his father had unzipped his pants while kneeling next to his sister and that his father left when he heard his stepmother's bed creak. After Earl left the witness stand, defendant objected to the testimony of the complainant concerning the incident which had occurred six years previously. This objection was overruled by the trial court on two grounds. First, the objection was not timely made. Second, the testimony was admissible under the similar acts statute.

Defendant testified on his own behalf at trial, indicating that he had gone out to the living room to stretch his daughter out on the couch and to cover her up. Defendant stated that he did place his hands on his daughter to straighten her out but that he did not touch her near her genitals. Defendant admitted asking his daughter if she wanted to be forgiven for stealing her stepmother's money. On cross-examination, over defendant's objection, the prosecution was allowed to ask defendant if he had been convicted of attempted rape of his daughter approximately six years earlier. Defendant answered in the affirmative.

No objections were raised to the trial court's instructions to the jury. The jury was instructed that defendant's prior conviction could only be considered insofar as it affected his credibility. The jury returned a verdict of guilty of second-degree criminal sexual conduct. Defendant appeals as of right.

Defendant urges this Court to consider the trial court's allowance of the similar-acts testimony as reversible error. However, the trial court was correct in ruling that defendant's objection to this evidence was not timely made. Absent a timely objection, this Court will not reverse unless it finds manifest injustice affecting the substantial rights of the parties. *People v Stinson,* 88 Mich App 672; 278 NW2d 715 (1979), MRE 103(d).

Upon reviewing the admission of this testimony for manifest injustice, we find that the trial court was also correct in ruling that the testimony was admissible as evidence of similar acts pursuant to MRE 404(b). The present case is similar to *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). In *DerMartzex,* the defendant sexually assaulted a ten-year-old female member of his household. The victim was a nonrelative spending the summer with the defendant and his wife. In a unanimous decision, the Supreme Court held that similar-acts testimony concerning prior sexual contact between defendant and the victim was admissible. The Supreme Court recognized that generally "whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence". *DerMartzex, supra,* 413. However, the Supreme Court also held that:

"Similarly, it has been held that the probative value outweighs the disadvantage where the crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense." *DerMartzex,* 413.

The *DerMartzex* Court went on to explain that allowing the admission of evidence of antecedent

sexual acts preceding the charged offense is especially justified where the offense charged is against a member of the defendant's household. Otherwise the testimony of the victim concerning the seemingly isolated incident may well appear incredible. *DerMartzex,* 415. See also MCL 750.520j; MSA 28.788(10).

The *DerMartzex* rationale is equally applicable to the present fact situation. Had not the victim been allowed to testify about the prior similar act, her testimony of her father's actions while kneeling beside her and next to her brothers might well appear incredible. Even if the defendant in the present case had voiced a timely objection, we would not find error in the trial court's decision to allow the similar-acts testimony into evidence.

Defendant next argues that the trial court committed reversible error in allowing him to be impeached with the question:

"Q. Isn't it true that you were convicted of a crime of attempted rape upon a person under the age of 16 and that person was in fact your daughter and that conviction occurred in the County of Kent late in the year 1974 or early in the year 1975; isn't that true?"

However, even if this impeachment was error, it was harmless error.

"What useful purpose is served in remanding for a new trial at which the court would determine whether evidence of the prior conviction is admissible for impeachment if, as we have already held, evidence of the prior conviction is admissible as part of the case in chief under the similar acts statute? We see none * * *." *People v Bates,* 94 Mich App 568, 575; 288 NW2d 655 (1980).

As already noted in this opinion, evidence of

defendant's prior criminal activity was properly admitted in the case in chief under the similar acts doctrine. As such, any error in the admission of these convictions for impeachment purposes was harmless. *People v Renno,* 392 Mich 45, 56; 219 NW2d 422 (1974).

Defendant made no objection to the jury instructions as given by the trial court. Failure to so object does not preserve the issue for appeal and this Court will not reverse absent a finding of manifest injustice. *People v Clay,* 91 Mich App 716; 283 NW2d 870 (1979), *People v Dixon,* 84 Mich App 675, 685; 270 NW2d 488 (1978). Reading the jury instructions as a whole, we find that the jury was fully and properly apprised of the applicable law. *People v Choate,* 88 Mich App 40; 276 NW2d 862 (1979), *Berlin v Snyder,* 89 Mich App 38, 41; 279 NW2d 322 (1979). We also take this opportunity to again point out the incorrectness of the Use Note to CJI 20:2:04 which indicates that the definition of sexual act must be given where there is any question about the sexual nature of the act and *only* when the defendant is charged with first or third-degree CSC. It has been held that the plain meaning of first and third-degree CSC is that the offense is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances, *regardless of the sexual purpose of the actor. People v Garrow,* 99 Mich App 834; 298 NW2d 627 (1980), *People v Hernandez,* 80 Mich App 465, 474; 264 NW2d 343 (1978). As stated in *Garrow, supra,* 838: "We agree with the majority in *Hernandez, supra,* that CJI 20:2:04 is erroneous as it conflicts with the statutory elements of first-degree criminal sexual conduct". We urge trial courts to discontinue the use of CJI 20:2:04 and to

instruct on the statutory definition of "sexual penetration", MCL 750.520a(h); MSA 28.788(1)(h), when a defendant is charged with first or third-degree CSC and to instruct on the statutory definition of "sexual contact", MCL 750.520a(g); MSA 28.788(1)(g), when a defendant is charged with second or fourth-degree CSC.

Defendant's last claim of error is that the trial court erred in sentencing defendant to a mandatory five-year minimum sentence pursuant to MCL 750.520f; MSA 28.788(6) despite the fact that no supplemental information was filed informing him that he faced sentence enhancement as a second offender. Defendant is incorrect. There are no procedural requirements within MCL 750.520f; MSA 28.788(6) which require the filing of a supplemental information. Defendant's argument that such a requirement should be implied from the habitual offender act, MCL 769.13; MSA 28.1085, is similar to the claim made by the defendant in *People v McFadden,* 73 Mich App 232; 251 NW2d 297 (1977). In *McFadden,* the defendant urged that the procedural safeguards of the habitual offender act be implied to the since-repealed § 48 of the Controlled Substances Act, being MCL 335.348; MSA 18.1070(48). The *McFadden* Court held that there was no express statutory requirement that the habitual offender act be applied to the Controlled Substances Act. The opinion goes on to state that the fact that the Legislature did not write into the Controlled Substances Act the procedural requirements of the earlier habitual offender act indicates a legislative intent that it did not wish to provide such procedural safeguards. *McFadden, supra,* 234-235.

The same factors apply in the present case. The Legislature did not write into MCL 750.520f; MSA

28.788(6) the procedural requirements of the earlier habitual offender act. Therefore, we will not imply these requirements where the legislative intent is that it did not wish to provide such requirements.

Affirmed.

D. E. WALSH, J., concurs in the result only.